IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

| | |
|---|---|
| BARBARA FRIES, | ) |
| | ) |
| Plaintiff, | ) 2:24-CV-01577-MJH |
| | ) |
| vs. | ) |
| | ) |
| SELECT SPECIALTY HOSPITAL - MCKEESPORT, INC., | ) |
| | ) |
| Defendant, | |

## MEMORDANDUM OPINION

On November 18, 2024, Plaintiff, Barbara Fries, filed the present action against Defendant, Select Specialty Hospital – McKeesport, Inc. (ECF No. 1). On March 10, 2025, Plaintiff filed an Amended Complaint, alleging claims under four statutes, (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000-2(a)(1), (2) the Age Discrimination in Employment Act of 1967, (3) the Family and Medical Leave Act of 1993, and (4) the Pennsylvania Human Relations Act, for discrimination, retaliation, and hostile work environment. (ECF No. 10). On March 24, 2025, Defendant filed a Partial Motion to Dismiss Plaintiff's retaliation and hostile work environment claims at Counts III and IV of the Amended Complaint, and an accompanying brief. (ECF Nos. 12 & 13). On April 14, 2025, Plaintiff filed a Response in Opposition to Defendant's Motion to Dismiss and accompanying brief. (ECF Nos. 14 & 15). On April 21, 2025, Plaintiff filed her Reply. (ECF No. 16). For the following reasons, Defendant's Partial Motion to Dismiss will be granted.

I.   **Statement of Facts**

Plaintiff, Barbara Fries, was employed by Defendant, Select Specialty Hospital – McKeesport, Inc. ("Select Specialty Hospital") from June 4, 2020 until her termination on February 2, 2024. (ECF No. 10, at ¶¶ 11, 26). Ms. Fries was 57 years old at the time of the relevant events. (*Id.* ¶ 1). Ms. Fries began her employment at Select Specialty Hospital as an R.N. and was eventually promoted to House Supervisor in the Clinical Services Department. (*Id.* ¶¶ 12-15). Plaintiff alleges that she had never been disciplined during her employment with Select Specialty Hospital until she was terminated. (*Id.* ¶¶ 17-20). Ms. Fries alleges that, three months prior to her termination, Select Specialty Hospital hired a new Human Resources Representative, Isabella Epperly. (*Id.* ¶ 22). Ms. Fries alleges that Ms. Epperly expressed "disdain" towards Plaintiff shortly after Ms. Epperly was hired. (*Id.* ¶ 23). Ms. Fries pleads that Ms. Epperly had an issue with Ms. Fries' scheduling of another C.N.A., named Katisha, but Ms. Epperly refused to speak directly with Ms. Fries about the scheduling issue. (*Id.* ¶¶ 24-25). Instead, Ms. Epperly reported her concerns to Ms. Fries' supervisor, Mary Jo Karnash. (*Id.*). Ms. Karnash told Ms. Fries not to worry about Ms. Epperly's report. (*Id.*).

Ms. Fries and her wife got married on January 21, 2024, and on January 28, 2024, while at work, some employees held a small party to celebrate the marriage. (*Id.* ¶ 21). On February 2, 2024, Ms. Fries was fired. (*Id.* ¶¶ 26-27). Select Specialty Hospital's stated reason for Ms. Fries termination was that she falsified documents. (*Id.* ¶¶ 26-27). Ms. Fries denies that she falsified any documents. (*Id.* ¶ 28). Ms. Fries alleges that Select Specialty Hospital did not follow its established protocol when it terminated Ms. Fries. (*Id.* ¶ 30). Ms. Fries alleges that Ms. Karnash, Ms. Fries' supervisor, was not consulted with or informed about Ms. Fries' termination until after Ms. Fries' termination. (*Id.* ¶ 31).

On May 17, 2024, after Ms. Fries' termination, she submitted a charge of discrimination to the Equal Employment Opportunity Commission. (*Id.* ¶ 53). Ms. Fries alleges that, during the EEOC proceedings, Select Specialty Hospital contended that Ms. Fries had previously received a warning in April 2022 for accumulating twelve "attendance points." (*Id.* ¶ 54). Ms. Fries pleads that she was unaware that she ever received such a warning, and she denies any violations of Select Specialty Hospital's attendance policy. (*Id.* ¶ 54). Ms. Fries' "best guess" was that the alleged absences related to the FMLA leave she had taken in April 2022. (*Id.* ¶ 55).

## II.     Relevant Legal Standards

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be

3

enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

In a civil rights case, when the court grants a motion to dismiss for a failure to state a claim, the court must offer the plaintiff leave to amend, even if it was not requested by the plaintiff, "unless doing so would be inequitable or futile." *Phillips*, 515 F.3d at 246; *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

### III.  Discussion

#### A.  Title VII, ADEA, and PHRA Retaliation Claims

Select Specialty Hospital alleges that Ms. Fries fails to allege sufficient facts to establish a prima facie case for retaliation under Title VII, the ADEA, or the PHRA, because Ms. Fries did not properly allege facts to show that she engaged in any protected activity. (ECF No 13, at 6). Select Specialty Hospital further alleges that Ms. Fries does not plead facts to show that her

termination was caused by the alleged protected activity. (*Id.*). Ms. Fries argues that she has pled facts to establish a protected activity under the respective statutes. (ECF No. 15, at 6). Specifically, Ms. Fries argues she engaged in a protected activity when she reported to her supervisor, Ms. Karnash, about Ms. Epperly's refusal to have direct contact with Ms. Fries. (*Id* ¶ 6). Ms. Fries further argues that she established a causal connection between this alleged complaint and her termination, because she was terminated shortly after she complained about Ms. Karnash to Ms. Epperly. (*Id.* ¶ 7).

To state a claim for retaliation under Title VII or the ADEA, and their parallel provisions contained in the PHRA, a plaintiff must show that (1) she engaged in protected activity; (2) she was subject to an adverse employment action contemporaneous with or following the protected activity; and (3) a causal connection exists between the protected activity and the adverse action. *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015). To satisfy the third element, the protected activity must have been the "but-for" cause of the adverse action. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). "Protected activity" in this context consists of a plaintiff opposing an employment practice prohibited by the statute, or filing a charge, testifying, or otherwise participating in an investigation or proceeding under the statute. *Bush v. Donahoe*, 964 F. Supp. 2d 401, 425 (W.D. Pa. 2013). While opposition to an unlawful practice also includes informal protests of such practices, such as complaints made to management, general complaints of alleged unfair treatment that do not put the employer on notice of the form of prohibited discrimination in question, do not constitute protected activity for purposes of a retaliation claim. *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015).

Here, it is unclear from Ms. Fries' Amended Complaint that the "complaints" she made to Ms. Karnash about Ms. Epperly communicated any sort of discrimination, based upon her sexual orientation or age. When it comes to Ms. Fries' complaint to her supervisor, she alleges that, "Ms. Epperly reportedly had some issues with the Plaintiff regarding scheduling pertaining to a C.N.A., Katisha, but would not speak directly to Plaintiff about the situation." (ECF No. 10, ¶ 24). Ms. Fries further alleges that "[she] reported her concerns to [her] supervisor, Mary Jo Karnash, Chief Nursing Officer, and Ms. Karnash advised the Plaintiff not to worry about anything that was being reported from Ms. Epperly." (*Id.* ¶ 26). As alleged, Ms. Fries' complaint, to Ms. Karnash about Ms. Epperly's conduct, did not convey to Ms. Karnash that Ms. Fries' believed that Ms. Epperly's conduct was because of Ms. Fries sexual orientation or age. Ms. Fries' allegations, regarding her complaint about Ms. Epperly's conduct, describe general unfair treatment, which is the type of treatment that is not considered a protected activity under the respective Acts at issue. Further, to the extent that Ms. Fries alleges that the disclosure of her sexual orientation to Select Specialty Hospital, through the work party celebrating her marriage, constitutes a protected activity for the purposes of retaliation, such general disclosure of her status is not considered opposition conduct that constitutes a protected activity. *See Bush*, 964 F. Supp 24 at 425. As such, Ms. Fries fails to allege facts sufficient to establish that she engaged in a protected activity under Title VII, the ADEA, or the PHRA.

Select Specialty Hospital's Motion to Dismiss Ms. Fries' retaliation claims under Title VII, the ADEA, and the PHRA, at Count III of the Amended Complaint, will be granted. As the Court cannot say that amendment will be futile, Ms. Fries' is granted leave to amend these claims.

B.  **FMLA Retaliation Claim**

Select Specialty Hospital argues that Ms. Fries fails to allege sufficient facts to establish any causal connection between Ms. Fries' FMLA leave in April 2022 and her February 2, 2024 termination; and thus, Ms. Fries does not establish a prima facie case for FMLA retaliation. (ECF No. 13, at 8). Ms. Fries argues that the fact that she took FMLA leave is not the operative protected activity; instead, she argues that the true protected activity occurred when Ms. Fries became aware, during the EEOC proceeding, that Select Specialty Hospital considered such leave to have been a violation of their attendance policy. (ECF No. 15, at 8).

To establish a prima facie case of retaliation under the FMLA, the plaintiff must demonstrate that (1) she invoked her right to FMLA benefits; (2) she suffered an adverse employment decision; and (3) the adverse decision was causally related to her invocation of her rights. *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508–09 (3d Cir. 2009). To be considered a protected activity, a plaintiff must have either taken leave under the FMLA or otherwise exercised her rights under the statute or opposed any practice made unlawful by the statute. *Reifer v. Colonial Intermediate Unit 20*, 462 F. Supp. 2d 621, 638 (M.D. Pa. 2006).

Select Specialty Hospital argues that the protected activity at issue is Ms. Fries' initial FMLA leave that she took in April 2022. Ms. Fries' April 2022 FMLA leave constitutes a protected activity, satisfying the first element of an FMLA retaliation claim. Further, Ms. Fries' termination constitutes an adverse action and satisfies the second element of an FMLA retaliation claim. However, Ms. Fries fails to establish facts sufficient to establish the third element, causal connection, because Ms. Fries' April 2022 FMLA leave occurred almost two years prior to her February 2, 2024 termination. A two-year gap between Ms. Fries' FMLA leave and her termination is too attenuated to establish any causal connection for her FMLA retaliation claim. *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) ("[A]

gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation[.]"). As such, Ms. Fries' fails to allege facts to establish a causal connection.

Ms. Fries argues that the actual protected activity at issue is when she learned, during the EEOC proceedings, that Select Specialty Hospital misclassified her FMLA leave as a violation of its attendance policy. However, simply being made aware of a potential violation of an attendance policy is not the type of opposition conduct or exertion of one's rights under the FMLA that constitutes a protected activity for the purposes of an FMLA retaliation claim. As such, Ms. Fries' fails to plead sufficient facts to establish that her being made aware of Select Specialty Hospital's misclassification of her April 2022 FMLA leave was a protected activity.

For the reasons discussed above, Select Specialty Hospital's Motion to Dismiss Ms. Fries' FMLA retaliation claims, will be granted. As the Court cannot say that further amendment would be futile, Ms. Fries will be granted leave to amend this claim.

### C. Hostile Work Environment Claim

Ms. Fries alleges that Select Specialty Hospital subjected her to a hostile work environment, based upon her sex and age. (ECF No. 10, at 11). Ms. Fries "does not oppose the dismissal of the hostile work environment claim." (ECF No. 15, at 9). As such, Select Specialty Hospital's Motion to Dismiss Ms. Fries' hostile work environment claim, at Count IV of the Amended Complaint, will be granted. Ms. Fries will not be granted leave to amend this claim.

### IV. Conclusion

For the reasons above, Select Specialty Hospital's Partial Motion to Dismiss, will be granted. Ms. Fries' Title VII, ADEA, PHRA, and FMLA retaliation claims, at Count III of the Amended

Complaint, will be dismissed, with leave to amend. Ms. Fries' hostile work environment claim, at Count IV of the Amended Complaint, will be dismissed, without leave to amend.

Ms. Fries may file an amended complaint on or before September 3, 2025. If Ms. Fries files an amended complaint, Select Specialty Hospital has until on or before September 17, 2025 to file an Answer. If Ms. Fries does not file an Amended Complaint, Select Specialty Hospital has until on or before September 17, 2025 to file an Answer. A separate order to follow.

DATE: August 21, 2025

Marilyn J. Horan
United States District Judge